IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
DELTA DIVISION

MADLYON CAROL WATERS                                              PLAINTIFF

vs.                                           CIVIL ACTION NO. 2:11-cv-00178-SAA

COMMISSIONER OF SSA                                               DEFENDANT


**MEMORANDUM OPINION**

This case involves an application under 42 U.S.C. § 405(g) for judicial review of the decision of the Commissioner of Social Security denying the application of plaintiff Madlyon Carol Waters for period of disability (POD) and disability insurance benefits (DIB) under Sections 216(I) and 223 of the Social Security Act from June 23, 2007 through January 31, 2008. Waters filed applications for POD, DIB and for supplemental security income (SSI) payments under Section 1614(a)(3) of the Act[1] on January 30, 2008, alleging disability beginning June 23, 2007. Docket 8, p. 155-161. The Commissioner granted her claim in part, finding that she was disabled as of February 1, 2008. Docket 8, p. 71, 100. Plaintiff challenged the denial of benefits from June 23, 2007 through February 1, 2008 (Docket 8, p. 97-98) and filed a request for a hearing. Docket 8, p. 115-116. She was represented by an attorney at the administrative hearing on November 18, 2009. Docket 8, p. 37-68. The Administrative Law Judge (ALJ) issued an unfavorable decision on March 25, 2010 (Docket 8, p. 16- 23) and, after reviewing additional information submitted by the plaintiff, the Appeals Council denied her request for a review.

---

[1] The plaintiff's SSI application was denied because her resources exceeded the $3,000 limit. Docket 8, p. 81-89.

Docket 8, p. 6-9.  Waters filed the instant appeal from the ALJ's most recent decision, and it is now ripe for review.  Because both parties have consented to have a magistrate judge conduct all the proceedings in this case under 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying final judgment.

## I.  FACTS

Waters was born on January 15, 1946.  Docket 8, p. 157.  She was sixty-one years old at the alleged onset of her disability and sixty-two years old on the date she was found disabled under the Act.  She completed the twelfth grade and one year of college.  Docket 8, p. 63, 199.  She was previously employed as a bookkeeper by the Department of Education for over twenty-seven years.[2]  Docket 8, p. 195.  She claimed disability due to remission of breast cancer, high blood pressure, heart problems and diabetes.  Docket 8, p. 194.

The ALJ determined that Waters suffered from "severe" impairments, including diabetes melitus, obstructive sleep apnea, coronary artery disease, and hypertension, but that she failed to demonstrate the required severity under 20 C.F.R. §§ 404.1521 and 416.921 for breast cancer and injury to the hip and thigh.  Docket 8, p. 18- 20.  The ALJ found that from June 23, 2007 through January 31, 2008, the plaintiff's severe impairments did not meet or equal a listed impairment in 20 C.F.R. Part 404, Subpart P, App. 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).  Docket 8, p. 20- 21.

Relying on the consultative opinion of Dr. Louis Saddler, the ALJ considered the entire record and concluded that Waters retained the Residual Functional Capacity (RFC) to perform the full range of light work in that "[s]he could lift and carry 20 pounds occasionally and

---

[2]The plaintiff's attorney stated that she was employed in the same job for twenty-nine years.  Docket 8, p. 42.  However, her disability application states that she was employed from November 1979 through June 2007 – twenty-seven years and seven months.  Docket 8, p. 195.

ten pounds frequently. She could stand and walk for six hours and could sit for six hours in an 8-hour workday. [She] could push and pull a maximum of twenty pounds." Docket 8, p. 21. The ALJ found that the plaintiff's impairments "could be expected to have imposed symptoms as she alleges" but not with the "intensity, persistence, and limiting effects as she alleges" Docket 8, p. 21. He further found the plaintiff's subjective complaints and hearing testimony for the period under consideration "less than fully credible" and her allegations of stringent functional limitations in activities of daily living "greatly disproportionate to the objective medical evidence."[3] Docket 8, p. 22. In support of his credibility finding, the ALJ referred to several medical records from the plaintiff's treating physicians which stated that she was doing well during that time.[4] *Id.* The plaintiff argues that the ALJ wrongly assessed her credibility because the reports were on a "comparative basis" and the plaintiff "very credibly explained the inconsistencies." Docket 13, p. 11.

Based on testimony of a vocational expert [VE], the ALJ held that plaintiff's "severe" impairments did not prevent her from performing work-related activities as a bookkeeper, and she could return successfully to her past relevant work. Docket 8, p. 22-23. Therefore, she was "not disabled" under the Act. Docket 8, p. 23.

---

[3]The plaintiff testified – "incredibly" according to the ALJ – that her typical day consisted of lying around with her feet elevated, watching television, and moving only when necessary. Docket 8, p. 22, 53. In contrast, the ALJ pointed out that in November 2007 that "she felt well, she retained a good energy level, and she exercised four times per week." *Id.*

[4] The ALJ cited a November 2007 medical record from Dr. Witherspoon stating that "she felt well, she retained a good energy level, and she exercised four times per week" and a September 2007 record from Dr. Churchwell stating that she was "doing well" and only experiencing difficulties when engaging in excessive arm work. Docket 8, p. 22.

Following the ALJ's decision, the plaintiff submitted additional evidence to the Appeals Council, including a letter from treating cardiologist Dr. Churchwell dated May 24, 2011 (Docket 8, p. 526) and a letter from treating physician Dr. Witherspoon dated July 12, 2010.[5] Docket 8, p. 528. After reviewing the additional evidence submitted by the plaintiff, the Appeals Council denied plaintiff's request for review because the information did not provide a basis for changing the ALJ's decision. Docket 8, p. 7-9.

The plaintiff claims that the ALJ wrongly assessed the plaintiff's credibility despite her credible explanation of the inconsistencies between her testimony and medical records of Dr. Churchwell and Dr. Witherspoon (Docket 13, p. 6-12), and the Appeals Council erred when they "ignored" the letters from her treating physicians. Docket 13, p. 18 -23. The plaintiff further claims that the ALJ erred in disregarding the consultative examination of Dr. Perry Duggar (Docket 13, p. 12- 15), the ALJ mischaracterized the plaintiff's ability to return to work (Docket 13, p. 15), and the ALJ failed to follow Social Security Rule 82-62 in finding that plaintiff could return to her past work. Docket 13, p. 16-17.

## II. STANDARD OF REVIEW

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[6] The burden rests upon plaintiff throughout the first four steps of this five-step process to prove disability, and if plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[7] First,

---

[5] The plaintiff also submitted a brief dated June 11, 2011. Docket 8, p. 266-267.

[6] *See* 20 C.F.R. §§ 404.1520, 416.920 (2010).

[7] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).

4

plaintiff must prove she is not currently engaged in substantial gainful activity.[8]  Second, plaintiff must prove her impairment is "severe" in that it "significantly limits [his] physical or mental ability to do basic work activities . . . ."[9]  At step three, the ALJ must conclude plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[10]  If plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[11]  At step five, the burden shifts to the Commissioner to prove, considering plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[12]  If the Commissioner proves other work exists which plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[13]

The court considers on appeal whether the Commissioner's final decision is supported by substantial evidence and whether the Commissioner used the correct legal standard.  *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990).  It is the court's responsibility to

---

[8] 20 C.F.R. §§ 404.1520(b), 416.920(b) (2010).

[9] 20 C.F.R. §§ 404.1520(c), 416.920(c) (2010).

[10] 20 C.F.R. §§ 404.1520(d), 416.920(d) (2010).  If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity."  20 C.F.R. § 416.925 (2003).

[11] 20 C.F.R. §§ 404.1520(e), 416.920(e) (2010).

[12] 20 C.F.R §§ 404.1520(g), 416.920(g) (2010).

[13] *Muse*, 925 F.2d at 789.

5

scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the Commissioner applied the proper legal standards in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). The court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[14] even if it finds that the evidence leans against the Commissioner's decision.[15] In the Fifth Circuit substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The proper inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson v. Perales,* 402 U.S. 389, 390, 28 L.Ed.2d 842 (1971).

### III. DISCUSSION

The plaintiff did not engage in substantial gainful activity between June 23, 2007 and January 31, 2008, satisfying step one. Docket 8, p. 43. The ALJ found at step two that

---

[14]*Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).

[15]*Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

6

plaintiff's diabetes melitus, obstructive sleep apnea, coronary artery disease, and hypertension were severe impairments but that her breast cancer and hip and thigh injury were not "severe" during the relevant time period. At step three, the ALJ found that the plaintiff's impairments did not meet the stringent requirements set out in the listings.[16] Docket 8, p. 20- 21. The ALJ determined that the plaintiff retained the functional capacity for a full range of light work: "[s]he could lift and carry 20 pounds occasionally and ten pounds frequently. She could stand and walk for six hours and could sit for six hours in an eight-hour workday. [She] could push and pull a maximum of 20 pounds." Docket 8, p. 21. The ALJ's step four determination that plaintiff could return to her past work as a bookkeeper resulted in a finding of "not disabled" under the Act. Docket 8, p. 22-23.

The plaintiff takes issue with the ALJ's determination of her credibility. The ALJ found the plaintiff's subjective complaints and hearing testimony to be "less than credible" because her claims of

> stringent functional limitations wherein she could stand or sit each for only ten minutes at a time and could not walk even one block appear greatly disproportionate to the objective medical evidence for the period under consideration, which as summarized herein presents essentially limited findings. The claimant testified at the hearing regarding the activities of daily living that she could not make her bed or perform mopping, sweeping, vacuuming, or the removal of clothes from a washer or dryer. These allegations of stringent restrictions in the activities of daily living likewise appear greatly disproportionate to the objective medical evidence, which as summarized herein presents essentially limited findings. The claimant testified incredibly at the hearing that her typical day during the period under consideration consisted of lying about with her feet

---

[16] At step three of the sequential evaluation process, plaintiff must prove by objective medical evidence that her impairment, either singly or in combination with other impairments, meets the stringent requirements set out in the listings. *Selders v. Sullivan*, 914 F.2d 614, 617, 619 (5th Cir. 1990), citing *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 891-92 (1990) (claimant bears the burden of proof to show medical findings that she meets each element of the listing).

7

> elevated, watching television, and moving only when necessary. The documentary
> record reflects to the contrary as noted that the claimant conceded in November 2007 that
> she felt well, she retained a good energy level, and she exercised four times per week...
> Dr. Churchwell noted to the same effect in September 2007 that the claimant was "doing
> well" and that she only experienced difficulties when engaging in excessive arm work...
> The claimant testified incredibly at the hearing that her hypertension medication imposed
> the side-effects of drowsiness and dizziness upon her. The documentary record for the
> period under consideration, however, fails to substantiate the presence of any significant
> side-effects from her use of these or any other of her prescribed medications.

Docket 8, p. 22. The plaintiff claims that because she credibly explained the inconsistencies between her testimony and the Churchwell and Witherspoon medical records, the ALJ's credibility determination was not based on substantial evidence. Docket 13, p. 11-12.

An ALJ's "determination or decision [of credibility] must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 1996 WL 374186, at *2. Social Security Ruling 96-7 was written to clarify the procedure to be used in assessing the credibility of a Social Security claimant's statements about symptoms and pain. *See Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims – Assessing the Credibility of an Individual's Statements*, SSR 96-7p, at *1.

The Ruling requires the ALJ to engage in a two-step process. In the first step, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the plaintiff's pain, he must then evaluate the intensity, persistence, and limiting effects of symptoms to determine the extent to which the symptoms limit her ability to do basic work activities. SSR 96-7p, 1996 WL 374186, at *2.

The ALJ found that the plaintiff's impairments "could be expected to have imposed symptoms as she alleges "but not with the "intensity, persistence, and limiting effects as she alleges" (Docket 8, p. 21) and found her subjective complaints "greatly disproportionate to the objective medical evidence." Docket 8, p. 22. When the plaintiff's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, as the ALJ determined in this case, the ALJ must make a finding on the credibility of those statements by considering the entire case record. SSR 96-7p, 1996 WL 374186, at *2.

The ALJ acknowledged plaintiff's ongoing history of coronary artery disease and referred to a "successful stenting procedure to the right coronary artery disease" in January 2007 and a cardiac catheterization procedure in May 2007 that resulted in discharge with no restrictions.[17] Docket 8, p. 18, 518. Waters testified that she felt like she could no longer work due to chest pain and shortness of breath in February 2007,[18] but she remained employed until June 2007, her alleged onset date.[19] Docket 8, p. 56.

---

[17] Waters claims that the ALJ mischaracterized her ability to return to work. Her discharge instructions from Vanderbilt University Medical Center stated "You may return to work on 5/14/2007 with the following restrictions:[blank]." Docket 8, p. 513. The plaintiff claims that the document was a form letter that "did not necessarily apply to her but [was] simply general instructions." Docket 13, p. 15. This argument fails because Waters did not provide any evidence that a doctor instructed her *not* to return to work or imposed any restrictions upon her return to work; the medical evidence was consistent with no restrictions, and the plaintiff testified that she was "feeling pretty good" after the cardiac catherization in May 2007. Docket 8, p. 56.

[18] The plaintiff testified that she had chest pain and shortness of breath at rest at least once a day (Docket 8, p. 48) and complained of pain in her legs. Docket 8, p. 50. She had a peripheral atherectomy to clean plaque in a femoral artery on February 15, 2007. Docket 8, p. 523.

[19] Waters testified that her long time boss asked her to stay until the end of the school year to close out the books. Docket 8, p. 56. Her employer made concessions for her to allow

At the hearing, Waters testified that from June 23, 2007 through February 1, 2008, she was unable to stand for more than 10 minutes at a time, could not walk the distance of a city block, could not lift a gallon of milk or perform any household tasks such as making her bed, cooking, cleaning, washing, or removing clothes from the washer or dryer, and experienced debilitating chest pain and shortness of breath on a daily basis. Docket 8, p. 43- 50, 52-53. She further testified that a typical day consisted of lying with her feet elevated, watching television and moving only when necessary. Docket 8, p. 53.

The ALJ found that her testimony describing stringent restrictions in activities of daily living was "greatly disproportionate to the objective medical evidence." In support of this determination, he cited a November 2007 medical record from Dr. Witherspoon stating that "she felt well, she retained a good energy level, and she exercised four times per week." Docket 8, p. 22. The ALJ further referred to Dr. Witherspoon's treatment records, including an ultrasound performed in August 2007 that showed no evidence of significant deep vein thrombosis. Waters explained that the exercise Dr. Witherspoon mentioned was prescribed cardiac physical therapy. Docket 8, p. 22.

Following the ALJ's unfavorable decision, Waters submitted a letter to the Appeals Council from Dr. Witherspoon that purported to clarify any confusion resulting from her records. Dr. Witherspoon stated that the deep vein thrombosis study was performed to "rule out any clot in the lower extremity causing her pain" and the negative finding did not "obviate the pain." Dr. Witherspoon explained that Waters was still having pain at the time of the ultrasound – August

---

her to continue working through May 2007, but her medical problems had required her to miss two or three weeks out of every month. Docket 8, p. 56, 59.

2007 – that was ultimately found to be related to her from her leg surgery and the stent.  She was instructed by her doctors to engage in a rehabilitation program and her participation in the rehab, likewise, did not obviate the pain.  Docket 8, p. 528.  Dr. Witherspoon explained that, although Waters was *otherwise* feeling well, "you can see recorded in the note she still continued to have pain at that time which is why we continued to refer her on to Vanderbilt and continued to suggest and recommend other therapies at that time." Docket 8, p. 528.

In support of his determination that the medical evidence contradicted the plaintiff's testimony, the ALJ further cited a September 4, 2007 letter from the plaintiff's treating cardiologist Dr. Churchwell stating that Waters "had done great with her coronary artery disease, her activity level remained essentially normal, and she experienced difficulties only when she performed excessive arm work." Docket 8, p. 19, 361.  Before the administrative hearing Dr. Churchwell provided a letter containing a chronology of the plaintiff's heart disease and vascular treatments.  Dr. Churchwell explained that, because coronary artery disease and vascular disease take years to develop, they must have been occurring for over 20 years prior to her first treatment – an arteriogram and stent – in January 2007.  Docket 8, p. 523.  At the hearing, Waters explained that Dr. Churchwell's statements resulted from her ability to walk but that her blood pressure and potassium were up and she was "living on pills." Docket 8, p. 58.  However, Dr. Churchwell's statement that treatment of Waters's coronary artery disease began before the relevant time period does not provide any additional information of the plaintiff's functional limitations during that time, and neither Dr. Churchwell's statement nor the plaintiff's testimony "credibly" explain or contradict Dr. Churchwell's prior statements evidencing of normal activity level during that time.

After the ALJ's unfavorable decision, Dr. Churchwell provided a letter that restated the plaintiff's heart and vascular disease history and explained that "[t]he vascular disease disorder of atherosclerosis will be something we will have to treat for a lifetime and clearly was *one of the reasons* that you had to quit work back in June 2007." Docket 8, p. 526 (emphasis the court's). The plaintiff argues that Dr. Churchwell's statements were "on a comparative basis" and "in no way indicated that she could work." Docket 13, p. 6. However, Dr. Churchwell's statements do not identify any functional limitations that would have prevented her from returning to work and may easily be interpreted to imply that other, unidentified reasons existed for plaintiff's quitting work.

The ALJ specifically detailed the reasons for his determination that Waters was not credible, as required by Social Security regulations, and identified the medical records that clearly contradict her testimony. In determining the plaintiff's RFC,[20] the ALJ relied on the opinion of non-examining consultative physician Dr. Louis Saddler and afforded "significant weight" to his opinion. Docket 8, p. 20, 21. Dr. Saddler performed a consultative review on March 8, 2008 and completed a physical residual functional capacity assessment. Docket 8, p. 376 - 385. The exertional limitations assigned by the ALJ are virtually identical to Dr. Saddler's findings.[21]  Docket 8, p. 21, 377-378.

---

[20] However, the ALJ may not establish physical limitations or the lack of them without medical proof to support that conclusion. *Patterson v. Astrue*, 2008 WL 5104746, *4 (N.D. Miss. 2008), citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). "The ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C 405(g), but are not conclusive when derived by ignoring evidence, misapplying the law or judging matters entrusted to experts." *Nguyen v. Chater*, 172 F.3d at 35.

[21] The explanation section of Dr. Saddler's Medical Consultant Review states "Breast ca – no recurrence" and "Ischemic heart disease – s/p stent" [Docket 8, p. 384], and he finds

Additionally, the record contains a Medical Consultant Review from Dr. Karen Hulett dated May 8, 2008, that evidences her review of the plaintiff's records but requests additional information about her current condition. Docket 8, p. 455. Dr. Hulett's physical residual functional capacity assessment states that the earliest reasonable onset date is February 2008. Docket 8, p. 480.

The responsibility to determine the plaintiff's residual functional capacity belongs to the ALJ, *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995), and in making his determination he must consider all the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite her physical and mental limitations. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). Unless he ignored evidence, misapplied the law or judged matters entrusted to experts – none of which were proven in this case – "[t]he ALJ's findings of fact are conclusive when supported by substantial evidence, 42 U.S.C 405(g)." The Commissioner argues, and the undersigned agrees, that the plaintiff does not point to any additional evidence that would support a legal or factual error in the ALJ's credibility determination for the period of June 23, 2007 through January 31, 2008. Docket 19, p. 7. Given that an ALJ's credibility determination is entitled to considerable deference as the ALJ is in the best position to assess the plaintiff's credibility during his firsthand examination of the plaintiff, *Harrell v. Bowen*, 762 F.2d 471 (5th Cir. 1988; *Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994), plaintiff's argument that the ALJ wrongly assessed the

---

exertional limitations of lifting and carrying 20 pounds occasionally and ten pounds frequently, standing, walking and sitting for six hours in an 8-hour workday, and unlimited pushing and pulling. Docket 8, p. 377. The ALJ's RFC varies only in that he found that she could push and pull a maximum of twenty pounds. Docket 8, p. 21.

plaintiff's credibility is without merit.

The plaintiff underwent a coronary bypass procedure on April 21, 2008 and reported accelerating chest pain for "the last two to three months." Docket 8, p. 423, 432. Dr. Duggar performed a consultative examination on April 9, 2009 and concluded that plaintiff's physical limitations were consistent with a less than sedentary exertional level (Docket 8, p. 498- 506). The Social Security Administration found Waters was disabled as of February 1, 2008. Docket 8, p. 71, 100. The ALJ afforded Dr. Duggar's opinions "minimal weight" for the time period of June 23, 2007 through February 1, 2008 because his assessment could not "reasonably be related back in time." Docket 8, p. 19.

Although Waters claims that the ALJ "basically disregard[ed]" Dr. Duggar's opinion (Docket 12, p. 13), it is clear from the decision that the ALJ considered the opinion and evaluated it in light of the other evidence contained in the record. After reviewing the entire record and finding minimal evidence supporting disability during the time period of June 23, 2007 through February 1, 2008, the ALJ determined that Dr. Duggar's opinion of the plaintiff's condition – which was issued during a time of proven disability and after her second cardiac surgery – was not comparable to her condition during the time period at issue.

The ALJ has considerable discretion in reviewing facts and evidence, *Perez v. Secretary of Health and Human Services*, 958 F.2d 445, 446 (1st Cir. 1991), and the undersigned finds the ALJ's decision to discount the opinion of Dr. Duggar reasonable. The ALJ stated how the medical proof, specifically the treating physicians' records, supported his RFC; he explained his conclusion that the plaintiff testified less than credibly; and he explained his decision to discount Dr. Duggar's opinion. Certainly, Dr. Duggar's report is not more reliable than

contemporaneous medical evidence from the plaintiff's treating physicians, as the Commissioner argues. Docket 19, p. 9. Therefore, plaintiff's argument that the ALJ erred in disregarding the consultative examination of Dr. Perry Duggar is without merit.

The plaintiff argues that "[i]t would have been simple to submit interrogatories to Dr. Duggar" asking whether his assessment could be reasonably related back to the time period at issue. Docket 13, p. 14. An ALJ has a duty to contact a treating physician or other medical sources "[w]hen the evidence . . . receive[d] from [a] treating physician . . . is inadequate . . . to determine whether [a claimant] is disabled." 20 C.F.R. §§ 404.1512(e), 416.912(e). These regulations further assure that "additional evidence or clarification *will* be sought" [emphasis added by the court] "when the report from [a] medical source contains a conflict or ambiguity that must be resolved, the report does not contain all the necessary information, or does not appear to be based on medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1512(2)(1). The plaintiff has not identified any conflict or ambiguity that would trigger the ALJ's duty to contact Dr. Duggar.

Arguing that the ALJ failed to follow Social Security Rule 82-62, the plaintiff contends that the ALJ did not make a proper finding of fact as to the physical and mental demands of her past work as a bookkeeper. Docket 13, p. 16. The VE testified that under DOT 210.382-014, the plaintiff's past work as a bookkeeper was "sedentary as to strength and exertional demands," and "skilled." Docket 8, p. 64. Because the ALJ may properly rely on a VE's uncontradicted testimony "provided that the record reflects an adequate basis for doing so," *Carey v. Apfel*, 230 F.3d 131, 146 (5th Cir. 2000), plaintiff's argument on this point is without merit.

Additionally, the plaintiff argues that the Appeals Council erred when it "ignored" the

letters from her treating physicians. Docket 13, p. 18 -23.  The Appeals Council stated that it reviewed the additional evidence submitted by the plaintiff, specifically mentioning "[m]edical evidence from Dr. Churchwell dated May 24, 2011" and "[m]edical evidence from Dr. Witherspoon dated July 12, 2010."  Docket 8, p. 9.  The Appeals Council denied plaintiff's request for review because the information did not provide a basis for changing the ALJ's decision.  Docket 8, p. 6-7.

When new evidence becomes available after the ALJ's decision, and there is a reasonable likelihood that the new evidence could change the outcome of the decision, a remand is appropriate so that this new evidence can be considered.  *Govea v. Astrue*, 2008 WL 2952343, *4 (W.D. Tex. 2008).  "New evidence" must meet three criteria:  (1) it must be new, and not merely cumulative of what is already in the record; (2) it must be material, *i.e.,* relevant, probative, and likely to change the outcome of the case; and (3) the claimant must demonstrate good cause for not having incorporated the new evidence into the administrative record.  *Pierre v. Sullivan*, 884 F.2d 799, 803 (5th Cir. 1989).  The Fifth Circuit has held:

> The requirement of materiality is an important one.  The concept 'material' suggests that the new evidence must be relevant and probative.  However, not every discovery of new evidence, even if relevant and probative, will justify a remand to the Secretary, for some evidence is of limited value and insufficient to justify the administrative costs and delay of a new hearing.

*Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir. 1981).  "A report that offers no new facts does not constitute new evidence."  *Evangelista v. Secretary of Health and Human Services*, 826 F.2d 136, 140 (1st Cir. 1987).

While they potentially clarify statements contained in the plaintiff's medical records, the letters from Dr. Churchwell and Dr. Witherspoon do not provide any additional evidence of the

16

plaintiff's functional limitations during the time period at issue and are neither new nor material. Waters has also failed to satisfy the third criteria for new evidence. Waters could have requested that these doctors provide medical source statements before the ALJ's decision, but she did not, and she has not demonstrated good cause for the delay. The undersigned finds that the Appeals Council fulfilled its responsibility to review the evidence provided after the ALJ's decision and assess whether the decision remained supported by substantial evidence, *see Higginbotham v. Barnett*, 405 F.3d 332, 337-38 (5th Cir 2005), and plaintiff's claim that the Council erred in reviewing the information is without merit.

## IV. CONCLUSION

After a review of the evidence presented to the ALJ and to the Appeals Council, this court is of the opinion that the ALJ's opinion was supported by substantial evidence, and the decision of the Commissioner should be affirmed. A separate judgment in accordance with this Memorandum Opinion will issue this date.

**SO ORDERED**, this, the 22nd day of May, 2012.

/s/ S. Allan Alexander
UNITED STATES MAGISTRATE JUDGE